IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRIAN CROMPTON,

        Plaintiff,

vs.                                                                                  Case No. 11-cv-431-JPG

BNSF RAILWAY COMPANY,

        Defendant.

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant BNSF Railway Company's ("BNSF") motion for summary judgment (Doc. 26). Plaintiff Brian Crompton ("Crompton") filed a response (Doc. 33), to which BNSF replied (Doc. 39). For the following reasons the Court denies BNSF's motion for summary judgment (Doc. 26).

**I.      Summary Judgment Generally**

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not

demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas*, 209 F.3d at 692.  Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.  With this standard in mind, the Court will next consider whether BNSF is entitled to judgment as a matter of law.

**II.     Facts**

Crompton, a 34-year old railroad conductor, worked for BNSF for nearly ten years at the time the unfortunate accident at issue occurred.  Crompton arrived at worked on April 24, 2011, in Centralia, Illinois, where he and an engineer travelled to Paducah, Kentucky, by car for the purpose of bringing a General Electric AC 4400 locomotive from Paducah to Centralia.  Just twenty-five miles south of Marion, Illinois, at Nielson Junction, Crompton attempted to operate a switch.  Crompton exited the front locomotive, and positioned himself on the top or second step of the locomotive with his hands on the rails.  In his deposition, Crompton recalled that he closed and latched the exterior or front cab door after exiting the locomotive.  Soon thereafter, the exterior or front cab door flew open and knocked Crompton from the moving locomotive to the ground.  Crompton suffered severe injuries as a result.

In his response to BNSF's motion for summary judgment, Crompton attached the deposition of Francis Ferry ("Ferry").  Ferry, a BNSF machinist, was sent to inspect the locomotive in question after the accident.  Ferry testified that the latch on the locomotive cab door, when properly operating, was meant to keep the door closed; however, if it does come unlatched, it can create unnecessary danger or injury to crew members.  Once the door is properly closed, Ferry affirmed the only way the door can come open is if the handle became unlatched.

Crompton also attached the affidavit of Bruce Yancey ("Yancey"), a locomotive engineer with BNSF. Yancey recalled several instances in which he had

> ridden on either this same model locomotive or similar model General Electric locomotives when the front cab or exterior door came open on its own without being opened or operated by a crew member. . . .

Doc. 33-3, p. 2. He further claimed that "these are common problems that are found on [General Electric] AC 4400 locomotives." *Id*. Yancey asserted that "BNSF and its company management are aware that the exterior or front cab doors and latches come open" improperly, and was present when company managers discussed this matter. *Id*. at 3. Also, prior to the incident in question, Yancey said he attended a safety meeting "that was called and conducted by BNSF company management due to another employee's injury caused by a locomotive's front door coming unlatched and opening." *Id*. Lenny Perry, another locomotive engineer with BNSF, similarly attested in his deposition that the front cab or exterior door on this model of locomotive had come open several times without being opened by a crew member, and that company management was aware of this problem.

On May 23, 2011, Crompton filed his two-count complaint alleging violations of the Federal Employer's Liability Act ("FELA") and the Locomotive Inspection Act ("LIA"). Thereafter, BNSF filed its motion for summary judgment alleging that Crompton had not produced sufficient information to support either of his claims, and BNSF was entitled to judgment as a matter of law. First, the Court will consider whether BNSF is entitled to summary judgment on Crompton's FELA claim.

**ANALYSIS**

**I.    FELA Claim**

The FELA provides that

> [e]very common carrier by railroad while engaging in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, employees of such carrier, or by reasons of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. Accordingly, "the FELA imposes on railroads a general duty to provide a safe workplace." *McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996). The FELA is a "broad remedial statute" that the courts are to liberally construe in order to effectuate congressional intent. *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 652 (1987). As such, the plaintiff's burden of proof in a FELA case is less than in a negligence case. *Lisek v. Norfolk and W. Ry. Co.*, 80 F.3d 823, 832 (7th Cir. 1994). "The railroad is liable if 'the proofs justify with reason the conclusion that employer negligence played any part, even the slightest in producing the injury . . . .'" *Id.* (quoting *Harbin v. Burlington N. R.R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990)). Accordingly, a plaintiff can survive a summary judgment motion "when there is even slight evidence of negligence." *Lisek*, 80 F.3d at 832 (quoting *Harbin*, 921 F.2d at 131).

However, "a FELA plaintiff is not impervious to summary judgment," and the court may properly grant the railroad's summary judgment motion where "the plaintiff presents no evidence whatsoever to support the inference of negligence." *Lisek*, 80 F.3d at 832. "To establish that a railroad breached its duty to provide a safe workplace, the plaintiff must show circumstances which a reasonable person would foresee as creating a potential for harm." *McGinn*, 102 F.3d at 300. "To establish such foreseeability, a plaintiff must show that the employer had actual or constructive notice of those harmful circumstances." *Holbrook v. Norfolk S. Ry. Co.*, 414 F.3d 739, 742 (7th Cir. 2005).

In its motion for summary judgment, BNSF alleges that Crompton has presented insufficient evidence that BNSF was negligent. BNSF maintains that "the only evidence of how this incident

took place that [Crompton] has presented thus far is his own testimony." Doc. 27, p. 4. BNSF concludes that Crompton's FELA "claim must fail" because Crompton's deposition indicated that he "did not notice any defect with the latch and by his own admission does not know why the door came open." *Id*. In his response to defendant's motion for summary judgment, Crompton attached his own affidavit clarifying this portion of his deposition testimony. Doc. 33-2, p. 3.

In its reply, BNSF argues that Crompton "is bound by his deposition testimony and cannot create a factual issue by contradicting his own sworn deposition testimony." Doc. 39, p. 2 (citing *Piscione v. Ernst & Young*, 171 F.3d 527 (7th Cir. 1999). However, the case that BNSF cites supporting its argument, actually lends support to Crompton. In *Piscione*, the plaintiff attempted to create a genuine issue of material fact by introducing statements that were contradictory to his deposition testimony. *Piscione*, 171 F.3d at 532-33. The court noted there was "no indication that the statements in the deposition resulted from mistake, confusion, or lapse of memory." *Id*. at 533. Here, however, Crompton suggests that his deposition testimony was taken out of context and offers a non-conflicting explanation for why he denied knowing why the door came open. Accordingly, the Court is not persuaded by BNSF's argument that Crompton's affidavit should not be considered.

Crompton has further presented the depositions of Yancey and Perry both indicating it is not uncommon for the exterior or front cab door on General Electric AC 4400 and similar locomotives to come open without a crew member taking an affirmative act to open the door. In his deposition, Crompton similarly attested that these doors would come open in this manner. Ferry affirmed that the latches were intended to keep the door closed, and the only way the doors could come open in this manner is if they became unlatched. Ferry further affirmed that the unlatching of the door would create an unnecessary danger to crew members. Thus, accepting Crompton's testimony that

he closed the door as true, the Court can reasonably draw an inference that the latch did not keep the door closed as intended, creating a risk of harm that resulted in Crompton's injuries.[1]

Yancey and Perry both declared in their affidavits that BNSF had knowledge of the door coming open in this manner.[2]  Specifically, Yancey said that prior to Crompton's accident he attended a safety meeting organized by BNSF to address a similar accident where a door became unlatched causing injury to another crew member.  Yancey also claimed he was present when company managers "were discussing these problems."  Doc. 33-3, p. 3.

Crompton has produced at least "slight evidence" indicating that the circumstances were such that a reasonable person would foresee the potential for risk of harm to his or her employees.  Further, Crompton has produced evidence suggesting that BNSF knew that the General Electric AC 4400 doors created an unnecessary risk of danger for its employees.  Accordingly, Crompton has established a genuine issue of material fact, and BNSF is not entitled to judgment as a matter of law on Crompton's FELA claim.  Next, the Court will consider whether BNSF is entitled to judgment as a matter of law on Crompton's LIA Claim.

**II.    LIA Claim**

In his complaint, Crompton alleged that BNSF had violated three particular sections of the LIA, including 49 C.F.R. §§ 229.7, 229.45, and 229.119.  The LIA requires that a railroad carrier must insure that a locomotive be "in proper condition and safe to operate without unnecessary

---

[1] The Court notes that BNSF argues in its reply that the deposition testimony of Yancey and Perry is inadmissible because the incidents they describe to prove a dangerous condition are not sufficiently similar to the incident at hand. Doc. 39, p. 2 (citing *Mihailovich v. Laatsch*, 359 F.3d 892 (7th Cir. 2004)).  *Mihailovich*, however, concerns the admission of evidence at trial.  On a motion for summary judgment, the Court must construe the facts in favor of the non-moving party.

[2] The Court further notes BNSF's argument that Crompton's co-employees' affidavits are not admissible because they contain evidence of "a very thinly veiled claim that there is a design defect with the doors," and the LIA preempts a state-law design defect claim.  Doc. 39, p. 4.  However, among other reasons, Crompton introduced the affidavits attesting to the malfunctioning door as evidence of the employer's knowledge of the danger.  Thus, this Court is not persuaded by BNSF's argument.

danger of personal injury." 49 U.S.C. § 20701.  Specifically, the three sections at issue provide as follows:

> Federal Rail Safety Laws (49 U.S.C. 20701-20703) make it unlawful for any carrier to use or permit to be used on its line any locomotive unless the entire locomotive and its appurtenances – (1) Are in proper condition and safe to operate in the service to which they are put, without unnecessary peril to life or limb; and (2) Have been inspected and tested as required by this part.

49 C.F.R. § 229.7; "All systems and components on a locomotive shall be free of conditions that endanger the safety of the crew, locomotive or train." 49 C.F.R. § 229.45; and "Cab doors shall be equipped with a secure and operable latching device." 49 C.F.R. § 229.119.

The LIA does not create a right of action, but establishes a safety standard. *Coffey v. Ne. Ill. Reg'l Commuter R.R. Corp. (METRA)*, 479 F.3d 472, 477 (7th Cir. 2007). "The failure to comply with that standard is negligence per se under the FELA." *Id*. (citing *Urie v. Thompson,* 337 U.S. 163, 188-89 n.30 (1949)). While the defendant need not prove negligence if he proves the LIA violation, "[h]e still has to prove a causal relation between a violation and the injury." *Coffey*, 479 F.3d at 477.

BNSF maintains that Crompton's LIA claim must fail because Crompton "has failed to produce any evidence of a defect [in] the door or latch or any other part of the locomotive" and it is "entitled to judgment as a matter of law." Doc. 27, p. 4. Again, as further explained in the discussion of his FELA claim, Crompton has produced some evidence that indicates the door was not in proper condition or safe to operate. Through deposition testimony and affidavits, Crompton produced evidence suggesting that the door came open improperly because of a defective latch and that the defective latch put Crompton and other crew members in unnecessary peril. Similarly, he produced evidence that the improperly latching door endangered the safety of the crew. He has produced evidence indicating that the cab was not equipped with a secure and operable latching device. Finally, Crompton has produced evidence that these alleged LIA violations resulted in the

7

improperly latched door swinging open, knocking him to the ground, and causing his injuries. Accordingly, Crompton has presented evidence that allows this Court to make a reasonable inference that BNSF violated LIA and caused, at least in part, Crompton's injuries. Thus, BSNF is not entitled to judgment as a matter of law on Crompton's LIA claim.

## CONCLUSION

For the foregoing reasons, Crompton has shown that a genuine issue of material fact exists as to both his FELA and LIA claims. Accordingly, the Court **DENIES** BNSF's motion for summary judgment (Doc. 26).

**IT IS SO ORDERED.**

**DATED:** September 26, 2012

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
